June 21, 2018

**Supreme Court**

No. 2017-299-Appeal.
(PC 16-298)

SMS Financial XXV, LLC        :

v.        :

David Corsetti et al.        :

NOTICE:    This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

SMS Financial XXV, LLC                    :

v.                    :

David Corsetti et al.                    :

Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**O P I N I O N**

**Chief Justice Suttell, for the Court.**  The plaintiff, SMS Financial XXV, LLC (plaintiff or SMS), appeals from a Superior Court judgment denying its motion for summary judgment and granting the cross-motion for summary judgment brought by the defendants, David Corsetti (Corsetti) and 385 South Main Street, LLC (collectively defendants).  This case came before the Supreme Court pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided.  After considering the parties' written and oral submissions and reviewing the record, we conclude that cause has not been shown and that this case may be decided without further briefing or argument.  For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

**I**

**Facts and Procedural History**

Corsetti was the principal of 385 South Main Street, LLC, which owned property located at 385 South Main Street, Providence (the property).  In 2007, Sovereign Bank loaned $1 million to defendants in exchange for a promissory note secured by a mortgage on the property.  The defendants failed to make payments on the note and defaulted.  Thereafter, Sovereign Bank proceeded with a short sale of the property and received approximately $700,000 from the sale.

- 1 -

After the sale, on September 2, 2010, defendants issued to Sovereign Bank a promissory note in the amount of $200,000 (the note) for the deficiency on the original note. On June 23, 2011, Sovereign Bank assigned its interest in the note to SMS. Sovereign Bank had lost the note, however, so it instead delivered to SMS an allonge and a lost note affidavit.[1] The lost note affidavit was sworn to by a Senior Vice President of Sovereign Bank and stated that Sovereign Bank was unable to locate the original note and had "made a due and diligent search for the [n]ote but ha[d] not found" it.

On January 22, 2016, SMS brought suit against defendants in Superior Court for defendants' alleged breach of the terms of the note. SMS sought judgment against Corsetti and 385 South Main Street, LLC, jointly and severally, for the payment of the note's $200,000 principal amount, interest totaling $189,600 plus accruing interest, late fees, costs, and attorneys' fees. The defendants raised multiple affirmative defenses in their answer, including estoppel, release, waiver, laches, unclean hands, and failure to mitigate damages. On July 25, 2016, SMS moved for summary judgment against defendants on the ground that there was no genuine issue of material fact with respect to defendants' breach of the note.

The defendants objected to SMS's motion for summary judgment and filed a cross-motion for summary judgment, asserting that SMS "is unable to enforce or collect upon" the note because the note was lost. Specifically, defendants referenced G.L. 1956 § 6A-3-309(a) of Rhode Island's enactment of the Uniform Commercial Code (Rhode Island UCC), which governs the enforcement of lost, destroyed, or stolen instruments, and provides that:

---

[1] An allonge is defined as "[a] slip of paper sometimes attached to a negotiable instrument for the purpose of receiving further indorsements when the original paper is filled with indorsements." Black's Law Dictionary 92 (10th ed. 2014).

"A person not in possession of an instrument is entitled to enforce the instrument if (i) the person was in possession of the instrument and entitled to enforce it when loss of possession occurred, (ii) the loss of possession was not the result of a transfer by the person or a lawful seizure, and (iii) the person cannot reasonably obtain possession of the instrument because the instrument was destroyed, its whereabouts cannot be determined, or it is in the wrongful possession of an unknown person or a person that cannot be found or is not amenable to service of process."

The defendants asserted that SMS was not entitled to enforce the note against them because the note was lost while in Sovereign Bank's possession, the note had never been located, and SMS never had possession of the note.

On November 17, 2016, a justice of the Superior Court heard the parties on the cross-motions for summary judgment. SMS asserted that defendants were estopped from arguing that SMS could not enforce the note because it was lost. Specifically, SMS referenced a provision in the note that stated:

> "Upon receipt of an affidavit of an officer of Lender as to the loss, theft, destruction or mutilation of this Note or any other Security Instrument which is not of public record, the undersigned will issue, in lieu thereof, a replacement Note or other security document in the same principal amount thereof and otherwise of like tenor."

SMS contended that the provision obligated defendants to issue a replacement note, and that, given their failure to do so, defendants were estopped from raising the lost note as a defense. When the hearing justice inquired as to whether demand for a replacement note was made upon defendants, SMS acknowledged that demand was not made, but maintained that demand was not necessary under the above-quoted provision.

SMS also cited to § 6A-3-203(b), which governs the rights acquired by the transfer of an instrument, such as the note, and provides that a transfer "vests in the transferee any right of the

transferor to enforce the instrument, * * * but the transferee cannot acquire rights of a holder in due course by a transfer, directly or indirectly, from a holder in due course if the transferee engaged in fraud or illegality affecting the instrument." SMS maintained that, because there was no allegation of fraud or illegality, it was therefore entitled to enforce the lost note.

In their argument, defendants noted that § 3-309(a) of the Uniform Commercial Code (the UCC) differed from § 6A-3-309(a) of the Rhode Island UCC. The former provides, in pertinent part:

> "A person not in possession of an instrument is entitled to enforce the instrument if:
>> "(1) the person seeking to enforce the instrument:
>>> "(A) was entitled to enforce the instrument when loss of possession occurred; or
>>> "(B) *has directly or indirectly acquired ownership of the instrument from a person who was entitled to enforce the instrument when loss of possession occurred*; * * *." U.C.C. § 3-309 (AM. LAW INST. & UNIF. LAW COMM'N 2004) (emphasis added).

The defendants distinguished this from the equivalent provision within the Rhode Island UCC, § 6A-3-309, explaining that, "[i]n Rhode Island, the original holder of that note, in possession of the note at the time that it was lost * * * can enforce it, but [its] assignee cannot enforce it." The defendants noted that § 3-309 of the UCC was amended in 2002 to directly address and remedy scenarios like the instant matter and that "Rhode Island chose not to accept the amendment * * *." The defendants maintained that the court should follow the plain language of § 6A-3-309(a), especially in light of the UCC's 2002 amendment, arguing: "[G]iven the fact that there is another statute that shows the amendment that would fix this issue, * * * the [S]upreme [C]ourt is obligated to follow the [G]eneral [A]ssembly's determination and intent. They, the legislature, decided not to amend the UCC to provide for this scenario."

- 4 -

On January 17, 2017, the hearing justice issued a bench decision. He granted defendants' cross-motion for summary judgment based on two considerations. The first consideration was the "competing provisions of the UCC which here are implicated." Specifically, the hearing justice found that § 6A-3-309, which governs the enforcement of lost, destroyed, or stolen instruments, conflicted with § 6A-3-203(b), which provides that the transfer of an instrument "vests in the transferee any right of the transferor to enforce the instrument * * *." The trial justice found that § 6A-3-309 "is a specific provision unique to lost, destroyed, or stolen instruments, unlike [§ 6A-3-203(b)] relied on by SMS."

The second consideration that guided the hearing justice's decision was that § 6A-3-309(a) of the Rhode Island UCC differs from § 3-309(a) of the UCC. The Rhode Island version requires a person who is not in possession of an instrument that he or she seeks to enforce to have been "in possession of the instrument and entitled to enforce it when loss of possession occurred," § 6A-3-309(a), whereas the UCC allows a person to enforce the instrument if he or she "directly or indirectly acquired ownership of the instrument from a person who was entitled to enforce the instrument when the loss of possession occurred." U.C.C. § 3-309. The hearing justice determined that under § 3-309(a) of the UCC, SMS would be entitled to enforce the note "because it acquired it from Sovereign, which presumptively was entitled to enforce"; however, he determined that SMS could not enforce the note under "the version that has been adopted here in Rhode Island." Accordingly, the hearing justice granted summary judgment in favor of defendants.

SMS moved for "reconsideration" of the hearing justice's decision.[2] In support thereof, SMS maintained that, in rendering his decision, the hearing justice overlooked material evidence in the record, namely, the note's provision that required defendants to issue a replacement note. On March 16, 2017, the hearing justice heard the parties on SMS's motion for reconsideration. SMS asserted that it did not challenge the application of § 6A-3-309; rather, SMS solely raised the issue of the provision of the note that required defendants to issue a replacement note, which SMS maintained would have rendered § 6A-3-309 irrelevant. When the hearing justice asked whether SMS could have compelled defendants to issue a replacement note, counsel for SMS responded, "I guess there's some way to file an affirmative injunctive relief complaint, * * * [b]ut I think the more practical response is that they cannot benefit from their own failure to abide by their obligations on the note." SMS asserted that defendants' failure to issue a replacement note amounted to a material issue of fact that precluded summary judgment.

In response, defendants argued that, in light of the hearing justice's finding that SMS was not entitled to enforce the note, SMS "cannot then go and pick and choose which provisions it wants to and thinks that it can enforce. The enforceability of the note goes to * * * the entire document." The defendants further noted that the lost note affidavit executed by Sovereign Bank did not request a replacement note from defendants. The hearing justice inquired whether defendants received the lost note affidavit, to which defendants' counsel replied, "the individual who is obligated here, never received an affidavit from the lender, Sovereign Bank, indicating

---

[2] SMS acknowledged in its motion for reconsideration that, although the Superior Court Rules of Civil Procedure do not provide for a motion for reconsideration, motions to reconsider are treated as motions to vacate pursuant to Rule 60(b) of the Superior Court Rules of Civil Procedure. *See School Committee of City of Cranston v. Bergin-Andrews*, 984 A.2d 629, 649 (R.I. 2009) (noting that this Court has historically "allowed 'motions to reconsider' to be treated as motions to vacate under Rule 60(b) of the Superior Court Rules of Civil Procedure * * *").

that there was a los[t] or a mutilated note, nor was [there] ever a demand or request made by Sovereign Bank or SMS to that effect or for that purpose seeking a replacement note."[3] The defendants further noted that there was no opposing affidavit from SMS indicating that the lost note affidavit was delivered to defendants. In response, SMS asserted that the lost note affidavit was attached to the complaint.

Satisfied that he "properly decided the matter predicated on the entire record," the hearing justice denied SMS's motion for reconsideration. On May 2, 2017, final judgment entered in favor of defendants. SMS timely appealed to this Court.

## II

### Standard of Review

"This Court examines an appeal from cross-motions for summary judgment *de novo*." *Roadepot, LLC v. Home Depot, U.S.A., Inc.*, 163 A.3d 513, 519 (R.I. 2017) (quoting *5750 Post Road Medical Offices, LLC v. East Greenwich Fire District*, 138 A.3d 163, 166 (R.I. 2016)). "In reviewing the Superior Court's judgment on the parties' motions for summary judgment, we * * * apply the same standards as those used by the trial court." *Id.* (quoting *5750 Post Road Medical Offices, LLC*, 138 A.3d at 166). "Thus, [s]ummary judgment is appropriate when, viewing the facts and all reasonable inferences therefrom in the light most favorable to the nonmoving party, the court determines that there are no issues of material fact in dispute, and the moving party is entitled to judgment as a matter of law." *Id.* (quoting *5750 Post Road Medical Offices, LLC*, 138 A.3d at 166-67).

---

[3] Specifically, Corsetti stated in his affidavit: "Following the short sale and execution of the two hundred thousand ($200,000.00) dollar promissory note, I never received any correspondence, communications, notices or demands regarding that promissory note from Sovereign Bank, nor did I ever receive a copy of the Promissory Note."

## III

## Discussion

On appeal, SMS argues that the hearing justice erred in granting summary judgment in favor of defendants because defendants were obligated, upon receiving the lost note affidavit, to issue a replacement note. SMS maintains that defendants should therefore be estopped from raising defenses premised on the fact that the note was lost because defendants did not issue a replacement note as they were mandated to do. SMS does not challenge the hearing justice's decision with respect to the application of § 6A-3-309; rather, it "limits its appeal to the [d]efendants' refusal to issue a replacement note" because "[h]ad [d]efendants fulfilled their obligation to issue a replacement note when provided with a [l]ost [n]ote [a]ffidavit, the issue of who would be able to enforce the lost note would be moot, since an original note would exist."

Because the present matter concerns a promissory note, which is a negotiable instrument, our analysis is governed by the Rhode Island UCC.[4] We will first look to § 6A-3-203, which governs the transfer of instruments, because Sovereign Bank transferred its rights under the note

---

[4] General Laws 1956 § 6A-3-104 defines a "negotiable instrument," in pertinent part, as:

> "an unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order, if it:
> "(1) Is payable to bearer or to order at the time it is issued or first comes into possession of a holder;
> "(2) Is payable on demand or at a definite time; and
> "(3) Does not state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money, but the promise or order may contain (i) an undertaking or power to give, maintain, or protect collateral to secure payment, (ii) an authorization or power to the holder to confess judgment or realize on or dispose of collateral, or (iii) a waiver of the benefit of any law intended for the advantage or protection of an obligor."

to SMS. Section 6A-3-203(b) provides that the transferee of an instrument is vested with "any right of the transferor to enforce the instrument," unless "the transferee engaged in fraud or illegality affecting the instrument." Although at first blush § 6A-3-203(b) appears to indicate that SMS, as the transferee of the note, has the right to enforce the note, we must look to § 6A-3-309, which addresses the enforcement of a lost note. In particular, § 6A-3-309(a) sets forth, in pertinent part, that "[a] person not in possession of an instrument is entitled to enforce the instrument if (i) the person was in possession of the instrument and entitled to enforce it when loss of possession occurred * * *." As the hearing justice perceptively noted, there is a conflict between § 6A-3-203(b) and § 6A-3-309(a). "When a specific statute conflicts with a general statute, our law dictates that precedence must be given to the specific statute." *South County Post & Beam, Inc. v. McMahon*, 116 A.3d 204, 215 (R.I. 2015) (quoting *Warwick Housing Authority v. McLeod*, 913 A.2d 1033, 1036-37 (R.I. 2007)). Accordingly, § 6A-3-309(a) applies because it is specific to scenarios where the note is lost, stolen, or destroyed, such as the instant matter.

Under the plain language of § 6A-3-309(a), it is clear that SMS is not entitled to enforce the note because the note was in the possession of Sovereign Bank, not SMS, when it was lost. Indeed, SMS never had possession of the note. SMS does not contest this finding; it solely challenges defendants' failure to issue a replacement note. It maintains that defendants should be estopped from raising any arguments premised on § 6A-3-309 because, had defendants issued a replacement note, § 6A-3-309 would be inapplicable. We reject this argument.

Pursuant to § 6A-3-309, SMS is not entitled to enforce the note's provision mandating that defendants issue a replacement note. Under a plain reading of § 6A-3-309, "enforcement" refers to the ability to enforce all provisions of the instrument because its language does not limit enforcement of the instrument to the enforcement of the financial rights and duties under the

note. *Lehigh Cement Co. v. Quinn*, 173 A.3d 1272, 1276 (R.I. 2017) ("[W]hen the language of a statute is clear and unambiguous, this Court must interpret the statute literally and must give the words of the statute their plain and ordinary meanings." (quoting *Accent Store Design, Inc. v. Marathon House, Inc.*, 674 A.2d 1223, 1226 (R.I. 1996))). In the instant matter, "enforcement" as used in § 6A-3-309 would include SMS's right—or lack thereof—to enforce the note's provision that obliges defendants to issue a replacement note upon receipt of a lost note affidavit. Accordingly, because there is no issue of material fact pertaining to SMS's inability to enforce the note and its provision obligating defendants to issue a replacement note, summary judgment was properly entered in defendants' favor.

Lastly, we acknowledge SMS's frustration that defendants are able to "escape liability." SMS attributes defendants' windfall to their failure to issue a replacement note; however, this is mistaken. Rather, defendants were able to "escape liability" from their obligations under the note because § 6A-3-309 of the Rhode Island UCC allows for the enforcement of a lost instrument that is not in the possession of the party seeking to enforce it only if he or she had possession of the instrument at the time it was lost. While this may be an issue of first impression in Rhode Island, this exact issue was addressed in *Dennis Joslin Co., LLC v. Robinson Broadcasting Corp.*, 977 F. Supp. 491 (D.D.C. 1997). In *Joslin*, the United States District Court for the District of Columbia was tasked with determining whether the plaintiff, an assignee of a lost note, was entitled to enforce the note although it did not have possession of the note at the time it was lost. *Joslin*, 977 F. Supp. at 494. At the time, the language of D.C. Code § 28:3-309(a) was identical to that of § 6A-3-309(a) and required a person who sought to enforce a note to have had actual possession of the note at the time it was lost. *Id.* The *Joslin* court

concluded that the plaintiff could not recover under the note because the plaintiff was not in possession of the note when it was lost. *Id.* at 495.

Notably, in response to the *Joslin* decision, § 3-309 of the UCC was amended in 2002. U.C.C. § 3-309 cmt. 2 (commenting that "[s]ubsection (a) is intended to reject the result in [*Joslin*]"). Under the amended version of § 3-309, "[a] transferee of a lost instrument need prove only that its transferor was entitled to enforce, not that the transferee was in possession at the time the instrument was lost." *Id.* While some states have followed suit and amended their codes to comport with the amended § 3-309 of the UCC, Rhode Island has not done so.[5] The remedy for situations such as the instant matter, where a party to an instrument can "escape liability," falls squarely within the purview of the Legislature.

## IV

### Conclusion

For the reasons set forth in this opinion, we affirm the judgment of the Superior Court and remand the papers thereto.

---

[5] The jurisdictions that have adopted, in its essence, the UCC's 2002 amendment to § 3-309(a) include: Alabama, Arkansas, District of Columbia, Florida, Hawaii, Indiana, Iowa, Kansas, Kentucky, Michigan, Minnesota, Mississippi, Montana, North Dakota, Ohio, Oklahoma, South Carolina, Tennessee, and Texas. U.C.C. § 3-309 ed. and rev. notes (AM. LAW INST. & UNIF. LAW COMM'N 2004).

STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

## SUPREME COURT – CLERK'S OFFICE

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | SMS Financial XXV, LLC v. David Corsetti et al. |
| **Case Number** | No. 2017-299-Appeal.<br>(PC 16-298) |
| **Date Opinion Filed** | June 21, 2018 |
| **Justices** | Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ. |
| **Written By** | Chief Justice Paul A. Suttell |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer From Lower Court** | Associate Justice Michael A. Silverstin |
| **Attorney(s) on Appeal** | For Plaintiff:<br><br>Robert Fine, Esq.<br>Richard J. Land, Esq. |
| | For Defendants:<br><br>John O. Mancini, Esq.<br>Nicholas J. Goodier, Esq.<br>Michael L. Mineau, Esq. |