**Supreme Court**

No. 2017-7-Appeal.
(PC 14-5678)

Note Capital Group, Inc., et al.          :

v.                                        :

Michele Perretta et al.                   :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Note Capital Group, Inc., et al.          :

v.                                :

Michele Perretta et al.               :

Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**Justice Indeglia, for the Court.**   In this foreclosure action, the defendants, Michele

Perretta[1]  and Anna M. Perretta (the Perrettas), appeal from a Superior Court order granting partial

summary judgment in favor of the plaintiff, Note Capital Group, Inc. (Note Capital).   First, the

Perrettas argue that their appeal from the Superior Court's interlocutory order is appropriate

because the grant of partial summary judgment had an element of finality, as that order allowed

Note Capital to foreclose on the Perrettas' property.   Second, the Perrettas contend that Note

Capital was not entitled to enforce the note because the chain of title to the note was tainted by an

improper transfer.   Third, the Perrettas aver that Note Capital was not entitled to enforce the note

secured by a mortgage on their property because the note had been lost by the previous holder of

the note, American Residential Equities, LIX, LLC (ARELIX),[2] prior to the assignment of the

mortgage to Note Capital.   This matter came before the Supreme Court on March 28, 2019, after

---

[1] The record contains various spellings of defendant Michele Perretta's first name.  However, for purposes of this opinion we shall use the spelling found on the mortgage and other relevant documents in this case.
[2] ARELIX, which was added as a plaintiff in the instant matter pursuant to Rule 15 of the Superior Court Rules of Civil Procedure, was defaulted in the Superior Court for failing to comply with discovery orders and is not a party to this appeal.

- 1 -

full briefing of the issues. Upon due consideration of the parties' arguments, the order of the Superior Court is vacated, and we remand the case for further proceedings consistent with this opinion.

## I

## Facts and Travel

The pertinent facts of this case are as follows. In 1984, the Perrettas obtained title to property located at 380 Pippin Orchard Road in Cranston, Rhode Island (the property). On October 25, 2006, they executed and delivered a promissory note to Zurich Mortgage Solutions, LLC (Zurich), in the amount of $971,750 (the note). To secure the note, the Perrettas executed a mortgage on the property in favor of Zurich. On November 28, 2006, Zurich transferred the note and mortgage to American Residential Equities (American Residential)[3] through an allonge and assignment.[4] *See In re Perretta*, No. 10-13531, 2011 WL 6305552, at *1 (Bankr. D.R.I. Dec. 16, 2011). However, two weeks prior to the transfer from Zurich to American Residential, on November 14, 2006, American Residential assigned the note and mortgage to GMAC Mortgage, LLC (GMAC). *Id.*

The Perrettas eventually defaulted on the note, and, on July 29, 2009, GMAC instructed its attorneys at the law firm of Orlans Moran PLLC (Orlans Moran) to foreclose on the mortgage. This action was stayed when the Perrettas filed for bankruptcy in the United States Bankruptcy Court for the District of Rhode Island. *See In re Perretta*, 2011 WL 6305552, at *1. Later, on May 4, 2010, GMAC transferred the note and mortgage to ARELIX via an allonge and assignment

---

[3] American Residential is a different, but related entity to ARELIX.
[4] An allonge is defined as "[a] slip of paper sometimes attached to a negotiable instrument for the purpose of receiving further indorsements when the original paper is filled with indorsements." *Black's Law Dictionary* 92 (10th ed. 2014).

recorded in the Cranston land evidence records. Despite vigorous opposition from the Perrettas, ARELIX sought and obtained relief from the temporary stay in the Bankruptcy Court to enforce its interest in the property.[5] *Id.* at *3.

In July 2013, ARELIX discovered that the note had become lost after ARELIX had given the note to Orlans Moran for purposes of prosecuting the foreclosure.[6] On July 30, 2013, ARELIX purported to assign its interest in the mortgage and lost note to Note Capital, and an assignment was recorded in the Cranston land evidence records on August 5, 2013. Additionally, Orlans Moran prepared and delivered a lost note affidavit in accordance with G.L. 1956 § 6A-3-301, outlining the steps it had taken to attempt to recover the note. On November 11, 2014, Note Capital filed a complaint in Providence County Superior Court seeking to foreclose on the Perrettas' mortgage, naming the Perrettas, among others, as defendants.[7] Note Capital also joined ARELIX as a plaintiff in the matter.

On June 24, 2015, Note Capital filed a motion for partial summary judgment to allow it to foreclose on the property. In support of its motion, Note Capital attached an affidavit executed by Jeffrey Kirsch (Kirsch), who identified himself as an authorized signatory of ARELIX and someone familiar with the company's business records. In that affidavit, Kirsh detailed the chain of assignments of the mortgage loan from Zurich to Note Capital. Additionally, Kirsch averred

---

[5] The Perrettas argued, *inter alia*, that ARELIX had no interest in the note because the chain of title had been tainted by the assignment from American Residential to GMAC, which occurred two weeks before American Residential had any interest in the note. *See In re Perretta*, No. 10-13531, 2011 WL 6305552, at *3 (Bankr. D.R.I. Dec. 16, 2011).

[6] Note Capital states in its brief to this Court that Orlans Moran mistakenly sent the note elsewhere.

[7] In its complaint, Note Capital alleged: "As of October 10, 2014, the sum of $1,605,870.29 is due and owing to [p]laintiff from [d]efendants, Michele Perretta and Anna M. Perretta, in connection with the [n]ote."

that ARELIX had given Note Capital express authority to act on its behalf in the foreclosure process.

In their opposition to Note Capital's motion, the Perrettas claimed that the chain of title to the note and mortgage was defective because American Residential had no interest in the note and mortgage on November 14, 2006, when the assignment from American Residential to GMAC was executed. The Perrettas also claimed that an issue of fact existed because different versions of the promissory note had been provided to them or filed in various courts. As to the lost note, the Perrettas argued that § 6A-3-309 prevents the transferee or assignee of a lost note from enforcing the note.[8] The Perrettas also filed a motion for summary judgment or, in the alternative, motion for judgment on the pleadings.

Subsequently, the Perrettas served a subpoena *duces tecum* upon Orlans Moran, seeking to depose a person with knowledge of the lost note. Orlans Moran designated Erika Hoover (Hoover), a senior operations attorney at Orlans Moran, as its agent for purposes of the deposition. After taking Hoover's deposition, the Perrettas submitted a supplemental memorandum, attaching the deposition. In response, Note Capital filed a memorandum attaching a separate affidavit executed by Hoover, along with numerous pages of documentation. The Perrettas objected to the filing of the documents, contending that Note Capital should have been prohibited from presenting additional material within ten days of the summary-judgment hearing, pursuant to Rule 56 of the Superior Court Rules of Civil Procedure.

A hearing on Note Capital's motion for partial summary judgment was held on May 10, 2016. After the parties had presented their arguments, the hearing justice observed that Note

---

[8] The parties filed supplemental memoranda regarding the issue of whether a lost note may be enforced by a party other than the entity in possession of the note at the time of loss.

- 4 -

Capital was essentially seeking judicial foreclosure of the mortgage on the Perrettas' property and found that the Perrettas' default on the note was not in dispute. The hearing justice next addressed the issue of the lost note and whether Note Capital was entitled to enforce the note. Because this Court had not yet ruled on the issue of whether the assignee of a lost note may enforce the note, the hearing justice surveyed cases from other jurisdictions, determining that there was a split of authority.[9]

Eventually, the hearing justice found that "[i]t would be inequitable for the plaintiff as a valid assignee not to stand in the shoes of the assignor. To hold otherwise would unjustly enrich the defendants because the note could never be enforced." He pointed to G.L. 1956 § 34-11-24, finding that the rights that the note granted to assignees of mortgages were not in conflict with the provisions of § 6A-3-309 and that an assignee of a lost note could enforce the note as a successor-in-interest to the assignor. In conclusion, the hearing justice found that there was "no genuine issue of fact that [ARELIX] was in possession and had the right to enforce it at the time the note was lost and that it validly assigned the note and mortgage to Note Capital." In addition, in order to protect the Perrettas' interests, the hearing justice stated that the order would "terminate any rights of [ARELIX] and any other person to the note other than Note Capital and Note Capital will indemnify the defendants against any claims made pursuant to the note by anyone other than it."

After granting Note Capital's motion for partial summary judgment, the hearing justice determined that it was "not a final judgment[,]" and he stayed the order for forty days to afford the Perrettas time to file a petition for writ of certiorari with this Court. On June 5, 2016, the Perrettas filed an objection to the proposed order granting partial summary judgment in the Superior Court,

---

[9] On June 21, 2018, this Court decided *SMS Financial XXV, LLC v. Corsetti*, 186 A.3d 1060, 1066 (R.I. 2018), holding that an entity was not entitled to enforce a lost note unless it was in possession of the note when it was lost.

- 5 -

and they also moved for entry of final judgment in accordance with Rule 54(b) of the Superior Court Rules of Civil Procedure. On July 12, 2016, an order entered granting partial summary judgment in favor of Note Capital and, *inter alia*, authorizing Note Capital to foreclose on the property; the order also defaulted ARELIX for failure to comply with discovery. The next day, on July 13, 2016, an order was entered denying the Perrettas' motion for entry of final judgment in accordance with Rule 54(b). Eschewing the writ, the Perrettas instead filed a timely notice of appeal on August 1, 2016.

## II

### Standard of Review

"A motion for summary judgment 'is designed to decide in an expeditious fashion cases presenting groundless claims.'" *Hexagon Holdings, Inc. v. Carlisle Syntec Incorporated*, 199 A.3d 1034, 1038 (R.I. 2019) (deletion omitted) (quoting *Gallo v. National Nursing Homes, Inc.*, 106 R.I. 485, 487, 261 A.2d 19, 21 (1970)). "When we review a hearing justice's grant of a motion for summary judgment, we conduct our analysis *de novo*." *Id.* "If we determine that 'there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law,' then we will affirm the grant of the motion." *Id.* (alteration omitted) (quoting *Sisto v. America Condominium Association, Inc.*, 68 A.3d 603, 611 (R.I. 2013)). "In this endeavor, 'we view the evidence in the light most favorable to the nonmoving party.'" *Id.* (alteration omitted) (quoting *Narragansett Indian Tribe v. State*, 81 A.3d 1106, 1109 (R.I. 2014)). "However, once the moving party establishes 'the absence of a material factual issue, the party opposing the motion has an affirmative duty to establish either by affidavit or by other means the material issue of fact to be decided.'" *Id.* (quoting *Grissom v. Pawtucket Trust Co.*, 559 A.2d 1065, 1066 (R.I. 1989)).

- 6 -

## III

## Discussion

We begin with a recital of the overriding principles of law applicable to the transaction in this case. "Generally, there are two operative documents to a real estate loan transaction—a promissory note and a mortgage." *Bucci v. Lehman Brothers Bank, FSB*, 68 A.3d 1069, 1077 (R.I. 2013). "The promissory note evidences the obligation of the borrower to repay the monies that have been lent, and the mortgage (or mortgage deed) acts as security for that debt." *Id.* A promissory note is a type of negotiable instrument, which is governed by Rhode Island's Uniform Commercial Code (Rhode Island UCC).[10] *SMS Financial XXV, LLC v. Corsetti*, 186 A.3d 1060, 1066 (R.I. 2018). "Additionally, 'Rhode Island is a title-theory state, in which a mortgagee not only obtains a lien upon the real estate by virtue of the grant of the mortgage deed but also obtains legal title to the property subject to defeasance upon payment of the debt.'" *Bucci*, 68 A.3d at 1078 (quoting *140 Reservoir Avenue Associates v. Sepe Investments, LLC*, 941 A.2d 805, 811 (R.I. 2007)).

---

[10] General Laws 1956 § 6A-3-104 defines a "negotiable instrument," in pertinent part, as:

> "an unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order, if it:
>> "(1) Is payable to bearer or to order at the time it is issued or first comes into possession of a holder;
>> "(2) Is payable on demand or at a definite time; and
>> "(3) Does not state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money, but the promise or order may contain (i) an undertaking or power to give, maintain, or protect collateral to secure payment, (ii) an authorization or power to the holder to confess judgment or realize on or dispose of collateral, or (iii) a waiver of the benefit of any law intended for the advantage or protection of an obligor."

## A

## Appellate Jurisdiction

As an initial matter, we must address whether the Perrettas' appeal is properly before this Court. The Superior Court granted partial summary judgment in favor of Note Capital and denied the Perrettas' motion to enter final judgment pursuant to Rule 54(b). Accordingly, the order granting partial summary judgment in favor of Note Capital, from which the Perrettas now appeal, was interlocutory in nature.[11]

We have held that "[g]enerally, interlocutory orders are not subject to review unless the order or decree falls within one of the exceptions set forth in G.L. 1956 § 9-24-7."[12] *Cayer v. Cox Rhode Island Telecom, LLC*, 85 A.3d 1140, 1146 (R.I. 2014) (deletion omitted) (quoting *Chiaradio v. Falck*, 794 A.2d 494, 496 (R.I. 2002)). One such exception is where "a sale of real or personal property [is] ordered[.]" Section 9-24-7. "Additionally, 'an order may fall within the ambit of our judicially created rule that permits review of an interlocutory order that has such an element of finality as to require immediate review by this Court to avoid possible injurious consequences.'" *Cayer*, 85 A.3d at 1146 (quoting *Chiaradio*, 794 A.2d at 496); *see also McAuslan v. McAuslan*, 34 R.I. 462, 472, 83 A. 837, 841 (1912). "We have said that 'consequences become injurious

---

[11] Note Capital does not challenge the propriety of the Perrettas' appeal, but instead invites us to accept appellate jurisdiction over this case because "the dismissal of the appeal would cause a substantial delay in justice."

[12] General Laws 1956 § 9-24-7 provides:

> "Whenever, upon a hearing in the [S]uperior [C]ourt, an injunction shall be granted or continued, or a receiver appointed, or a sale of real or personal property ordered, by an interlocutory order or judgment, or a new trial is ordered or denied after a trial by jury, an appeal may be taken from such order or judgment to the [S]upreme [C]ourt in like manner as from a final judgment, and the appeal shall take precedence in the [S]upreme [C]ourt."

when their occurrence is imminent and the damage they will work irreparable.'" *Id.* (brackets and deletion omitted) (quoting *Chiaradio*, 794 A.2d at 496).

The order granting partial summary judgment states, in pertinent part: "Partial Summary Judgment is granted authorizing Note Capital Group, Inc. to exercise its remedies as permitted by the Mortgage recorded in the City of Cranston in Book 3520, page 165, *including, without limitation foreclosure in accordance with the statutory power of sale*." (Emphasis added.) This order can be interpreted as one ordering the sale of real property, because it authorized Note Capital to sell the property. *See* § 9-24-7. Therefore, we hold that the Perrettas' appeal from the Superior Court's interlocutory order is properly before this Court under the exception in § 9-24-7 permitting interlocutory appeals where "a sale of real or personal property [is] ordered[.]"

**B**

**Chain of Title**

The Perrettas maintain that Note Capital does not hold title to the note and mortgage because the chain of title was tainted by an improper transfer. They contend that, because American Residential did not yet have an interest in the note and mortgage when it purported to transfer its interest in those instruments to GMAC on November 14, 2006, any subsequent assignments were void. On the other hand, Note Capital claims that the Perrettas lack standing to challenge the assignments because the transfer from American Residential to GMAC was not void, but was merely voidable. We agree with Note Capital; the Perrettas lack standing to challenge the validity of the assignment from American Residential to GMAC.

This Court has held that "[s]tanding is a threshold inquiry into whether the party seeking relief is entitled to bring suit." *Cruz v. Mortgage Electronic Registration Systems, Inc.*, 108 A.3d 992, 996 (R.I. 2015) (quoting *Narragansett Indian Tribe*, 81 A.3d at 1110). "When one party

challenges standing, 'the focal point shifts to the claimant, not the claim, and a court must determine if the plaintiff whose standing is challenged is a proper party to request an adjudication of a particular issue and not whether the issue itself is justiciable.'" *Id.* (deletion omitted) (quoting *Narragansett Indian Tribe*, 81 A.3d at 1110). "The essence of the question of standing is whether the party seeking relief has alleged such a personal stake in the outcome of the controversy as to ensure concrete adverseness that sharpens the presentation of the issues." *Id.* (brackets and deletion omitted) (quoting *Narragansett Indian Tribe*, 81 A.3d at 1110).

Further, this Court has held that "homeowners [have] standing to 'challenge the assignment of mortgages on their homes to the extent necessary to contest the foreclosing entity's authority to foreclose.'" *Cruz*, 108 A.3d at 996 (quoting *Mruk v. Mortgage Electronic Registration Systems, Inc.*, 82 A.3d 527, 536 (R.I. 2013)). "We cautioned, however, that this holding should be narrowly construed to encompass only those situations where a mortgagor challenges an 'invalid, ineffective, or void assignment of the mortgage.'" *Id.* at 996-97 (quoting *Mruk*, 82 A.3d at 536). "Moreover, we agreed that mortgagors do 'not have standing to challenge shortcomings in an assignment that render it merely voidable at the election of one party but otherwise effective to pass legal title.'" *Id.* at 997 (quoting *Mruk*, 82 A.3d at 536). "A void contract is one that cannot be enforced, and in the mortgage context, a void assignment 'is one in which the putative assignor never properly held the mortgage and, thus, had no interest to assign.'" *Id.* (quoting *Wilson v. HSBC Mortgage Services, Inc.*, 744 F.3d 1, 10 (1st Cir. 2014)).

The doctrine of estoppel by deed is dispositive on the issue of the Perrettas' standing in this case because it renders the assignment from American Residential to GMAC merely voidable, rather than void. *See IDC Properties, Inc. v. Goat Island South Condominium Association, Inc.*, 128 A.3d 383, 391 (R.I. 2015). In essence, that doctrine provides that an assignor of an interest in

property (such as a mortgage), despite lacking an actual interest in the property at the time of the transfer, is prevented from denying the validity of the transfer if the assignor later acquires an interest in the property. *See id.* ("Generally, the doctrine of estoppel by deed provides that equity will not permit a grantor, or one in privity with him or her, to assert anything in derogation of an instrument concerning an interest in real or personal property as against the grantee or his or her successors.") (quoting 28 Am. Jur. 2d *Estoppel and Waiver* § 5 at 469 (2011)).

In this case, as between American Residential and GMAC, American Residential would have been estopped from denying the validity of the assignment to GMAC, which occurred on November 14, 2006, after American Residential obtained title to the note and mortgage on November 28, 2006. Accordingly, the assignment from American Residential to GMAC was merely *voidable*, because American Residential did eventually obtain an interest in the note and mortgage; GMAC would have been able to enforce that transfer through the doctrine of estoppel by deed. As such, the Perrettas lack standing to challenge the assignment from American Residential to GMAC because the assignment was not void.

## C

### Enforcement of the Note and Mortgage

The Perrettas raise two other arguments in support of vacating the grant of partial summary judgment in favor of Note Capital. The Perrettas first maintain that there were genuine issues of material fact that should have precluded the grant of summary judgment. We agree with this assertion. In rendering his decision below, the hearing justice stated: "[P]laintiffs are able to enforce the note under Section 3-309 as written because the [c]ourt finds there is competent evidence in the record that [ARELIX] was in possession of the note and entitled to enforce it when it was lost * * *." However, in doing so, the hearing justice made an impermissible factual

determination regarding the validity of the note that Note Capital is attempting to enforce. In discovery, the Perrettas presented their own affidavit, along with several versions of the note that had been sent to them throughout the bankruptcy and foreclosure proceedings. This fact alone calls into question ARELIX's (and, by extension, Note Capital's) authority to enforce the lost note, because it is not clear which version of the note, if any, is authentic.

This Court has stated that "[t]he purpose of the summary-judgment procedure is to identify disputed issues of fact necessitating trial, not to resolve such issues." *Plainfield Pike Gas & Convenience, LLC v. 1889 Plainfield Pike Realty Corp.*, 994 A.2d 54, 58 (R.I. 2010) (quoting *Rotelli v. Catanzaro*, 686 A.2d 91, 93 (R.I. 1996)). "Further, 'summary judgment is an extreme remedy that should be applied cautiously.'" *Id.* (brackets omitted) (quoting *Sjogren v. Metropolitan Property and Casualty Insurance Company*, 703 A.2d 608, 610 (R.I. 1997)). Reviewing the evidence in the light most favorable to the Perrettas, as we must, we hold that they have raised a genuine issue of material fact regarding the validity of the note. Therefore, we vacate the grant of partial summary judgment in favor of Note Capital, and we remand this case to the Superior Court for a proper determination of this material factual issue.

The Perrettas next argue that the "lost note statute," § 6A-3-309 of the Rhode Island UCC, prevents Note Capital from foreclosing on the property because Note Capital was not in possession of the note when it was lost.[13] In *SMS Financial XXV, LLC*, an opinion that was not available to

---

[13] Section 6A-3-309 states, in pertinent part:

> "A person not in possession of an instrument is entitled to enforce the instrument if (i) the person was in possession of the instrument and entitled to enforce it when loss of possession occurred, (ii) the loss of possession was not the result of a transfer by the person or a lawful seizure, and (iii) the person cannot reasonably obtain possession of the instrument because the instrument was destroyed, its whereabouts cannot be determined, or it is in the wrongful

the hearing justice at the time he decided Note Capital's motion, we interpreted § 6A-3-309 and adopted the opinion of the United States District Court for the District of Columbia in *Dennis Joslin Co., LLC v. Robinson Broadcasting Corp.*, 977 F. Supp. 491 (D.D.C. 1997), restricting the ability to enforce a lost note to the entity that was in possession of the note *and* entitled to enforce the note when it was lost. *See SMS Financial XXV, LLC*, 186 A.3d at 1066, 1067. We pointed out that this outcome was dictated by the fact that the Legislature had not adopted the amended version of Uniform Commercial Code § 3-309, which was enacted in the wake of *Joslin*.[14] *See id.* at 1067 ("Under the amended version of § 3-309, 'a transferee of a lost instrument need prove only that its transferor was entitled to enforce, not that the transferee was in possession at the time the instrument was lost.'") (brackets omitted) (quoting U.C.C. § 3-309 cmt. 2). However, we observe that there was no mortgage involved in that case as there is here. *See id.* at 1062.

Accordingly, as part of the above-ordered remand, the Superior Court may consider, *inter alia*, our opinion in *SMS Financial XXV, LLC*.

## IV

## Conclusion

For the reasons stated herein, we vacate the order of the Superior Court and remand for further proceedings consistent with this opinion.

---

possession of an unknown person or a person that cannot be found or is not amenable to service of process."

This statute harkens back to a day when a singular lending institution held the note and mortgage throughout the entirety of the life of the loan. However, in view of the frequency with which notes and mortgages are transferred from one entity to another today, there is little surprise that the note in this case was lost.

[14] There, we concluded by stating: "The remedy for situations such as the instant matter, where a party to an instrument can 'escape liability,' falls squarely within the purview of the Legislature." *SMS Financial XXV, LLC*, 186 A.3d at 1067.

## SUPREME COURT – CLERK'S OFFICE

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Note Capital Group, Inc., et al. v. Michele Perretta et al. |
| **Case Number** | No. 2017-7-Appeal.<br>(PC 14-5678) |
| **Date Opinion Filed** | May 23, 2019 |
| **Justices** | Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia JJ. |
| **Written By** | Associate Justice Gilbert V. Indeglia |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer From Lower Court** | Associate Justice Richard A. Licht |
| **Attorney(s) on Appeal** | For Plaintiff:<br><br>Michael R. Hagopian, Esq. |
| | For Defendants:<br><br>John B. Ennis, Esq.<br>Bernard J. Lemos, Esq. |